**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

POWERHOUSE MORTGAGE &
REALTY, INC., a California Corporation,                    CASE NO. 1:23-cv-23080

      Plaintiff,

  vs.                                                    JURY TRIAL DEMANDED

RIVX LOGISTICS LLC, a Florida Limited
Liability Company, RIVX AUTOMATION
CORP., a Florida Corporation, MACEDA
TRANSPORTATION SERVICES, INC. d/b/a
RIVX TRUCKING LLC, a Florida Corporation,
C2 CARRIER LLC, a Florida Limited Liability
Company, LNV TRUCKING LLC, and
ANTONIO RIVODO, an individual,

      Defendants.

_____/

## <u>COMPLAINT FOR DAMAGES AND ACCOUNTING</u>

Plaintiff, POWERHOUSE MORTGAGE & REALTY, INC. ("**Plaintiff**"), bring this action

seeking monetary relief and an accounting against Defendants, RIVX LOGISTICS LLC ("**RivX**"),

RIVX AUTOMATION CORP. ("**RivX Automation**"), MACEDA TRANSPORTATION

SERVICES, INC. d/b/a RIVX TRUCKING LLC ("**Maceda**"), C2 CARRIER LLC ("**C2**"), LNV

TRUCKING LLC ("**LNV**"), and ANTONIO RIVODO ("**Rivodo**") and alleges as follows:

### INTRODUCTION

1.    Plaintiff owns and is the record title holder to three trucks (the "**Trucks**") used for

commercial transport in interstate commerce.

2.    The Trucks are: (i) a 2018 Freightliner Cascadia with VIN Number

3AKJHHDR0JSJJ0516; (ii) a 2019 Freightliner Cascadia 126 with VIN Number

3AKJHHDR6KSKJ0492; and (iii) a 2019 Freightliner Cascadia 126 with VIN Number



*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 2

1FUJHHDR7KLKG9526.

3.      Rivodo operated RivX Trucking LLC, RivX, RivX Automation, C2, and Maceda as one entity, using their different corporate forms interchangeably but for the same purposes, and the four are alter egos of each other and of Rivodo.

4.      Maceda, C2, and LVN are authorized carriers in interstate trucking. Each has been issued a USDOT Number. The other corporate Defendants operate in interstate trucking using the USDOT Numbers of C2 and Maceda.

5.      In November of 2022, Defendants fraudulently induced Plaintiff to enter a Logistics, Trucking Business Management and Consulting Services Contract (the "**Management Contract**") with Maceda, a true and correct copy of which is attached as Exhibit "A."

6.      The Management Contract was prepared by Defendants without any input from Plaintiff and presented for execution without any opportunity for negotiation.

7.      Defendants presented Plaintiff with a fraudulent Investment Proposal (ostensibly from RivX Automation) before the Parties signed the Management Contract (purportedly between Plaintiff and RivX Trucking LLC). A true and correct copy of the Investment Proposal is attached to the Management Contract at Exhibit "A."

8.      Defendants promised "investors from all over the world with little to no experience in trucking and logistics" the opportunity for Defendants to purchase trucks for the investors that the corporate Defendants, as authorized common carriers, would then add to their fleets and completely manage on behalf of Plaintiff. *See* Investment Proposal, Exhibit "A."

9.      Defendants offered locate, purchase, and pay the downpayments on the Trucks for Plaintiff (using some of the funds provided by Plaintiff, as described in the Investment Proposal), add them to Defendants' fleets, and then to "manage all logistics, dispatching, maintenance,

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 3

bookkeeping, reports, and more" for the Trucks. *See id.*

10.    To induce Plaintiff to enter the Management Contract, Defendants represented:

(a)    Defendants have "decades of experience in the trucking industry."

(b)    "RivX dispatching will be assigning loads to your truck to deliver freight around the country for 25-28 days monthly."

(c)    Plaintiff would earn 92% of gross income from the commercial operation of the Trucks, with the corporate Defendants just charging an 8% "dispatching fee."

(d)    "On average, our investor's vehicles produce $27,000 - $32,000 gross revenue monthly."

(e)    The corporate Defendants' "bookkeeper will pay all other expenses, including driver's salary, fuel cost, travel expenses, GPS, maintenance, insurance, yard fees, factoring, tax, and additional miscellaneous charges" associated with use of the Trucks.

(f)    The corporate Defendants will procure "full coverage truck insurance" for each Truck.

(g)    Each truck will produce net income "that will average between $5,000 - $7,000. *See id.*

11.    Defendants represented they would manage and operate the Trucks – and specifically expenses related to the operation of the same – in the best interests of Plaintiff and for his benefit.

12.    Defendants represented the benefits they would receive under the Parties arrangement were limited to a $20,000 "consultancy fee" under the Management Contract and their "dispatching fee" of eight percent (8%) of gross income earned by the Trucks.

13.    Defendants' website represented "[w]e **only** charge 8% for our dispatching

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 4

services."[1] (emphasis added).

14.     Defendants failed to disclose they would "upcharge" Plaintiff with inflated outside expenses such as fuel, GPS monitoring, driver pay, maintenance on the Trucks, and replacement parts.

15.     Defendants' website also represented "trucking automation is the most lucrative opportunity on the market" and "[t]he average investor sees anywhere from $4,000 - $6,000 in net profitability per truck."[2]

16.     Defendants provided Plaintiff with fraudulent examples of monthly "profit and loss" reports for an owner in their fleet. The report was from Maceda. True and correct copies of the reports are attached as Composite Exhibit "B."

17.     The foregoing statements are false, and Defendants knew they were false when made to induce Plaintiff to sign the Management Contract and the Lease (as defined below).

18.     The Management Contract does not define "gross income" or "revenue," nor does it expressly identify any expenses to be deducted from revenues or income before Plaintiff's compensation is calculated.

19.     Furthermore, the Management Contract does not set flat fees for any operating costs, expenses, or "charge backs" to be deducted from gross income earned by the Truck, nor does it identify the ways any such "charge backs" would be calculated.

20.     Rivodo signed the Management Contract on behalf of RivX Trucking LLC, despite knowing that he (personally) had voluntarily dissolved that limited liability company just one week beforehand. A true and correct copy of the Notice of Dissolution for RivX Trucking LLC is attached as Exhibit "C."

---

[1]     *See* http://www.rivx.co/trucking-automation, last visited August 11, 2023.

[2]     *See* http://www.rivx.co/trucking-automation, last visited August 11, 2023.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 5

21.     Pursuant to the Management Contract, Plaintiff paid Defendants $215,000.00 (the "**Investment Funds**").

22.     Defendants agreed to use $90,000.00 of the Investment Funds for downpayments to buy the three Trucks, and the rest was for other identified expenses including: insurance, driver acquisition, trailer leases, GPS systems, fuel, permits and registrations, maintenance inspections, and the Defendants' $20,000.00 "consultancy fee." *See* Investment Proposal, Exhibit "A."

23.     Despite charging Plaintiff for certain operating expenses out of the Investment Funds, the corporate Defendants later charged Plaintiff **again** for the same expenses by deducting amounts from income earned by operating the Trucks (without prior notice to Plaintiff).

24.     Pursuant to Paragraph 4 of the Management Contract, Defendants agreed to purchase, register, and obtain permits for the Trucks such that they would be fully "operational," on the road, and generating income within ninety (90) days after the effective date of the Management Contract. If the trucks were not "operational" within 90 days, Defendants were obligated to fully refund the Investment Funds to Plaintiff. *See* Exhibit "A."

25.     Defendants failed to ensure the Trucks were operational within ninety (90) days; in fact, not one Truck was operational until months after that deadline.

26.     Plaintiff demanded Defendants return his Investment Funds because the Trucks were not operational on time, but Defendants refused to refund his money.

27.     On February 27, 2023, Plaintiff and the corporate Defendants entered into a Master Lease and Services Agreement for the lease and operations of the Trucks (the "**Lease**"). A true and correct copy of the Lease is attached as Exhibit "D."

28.     The Lease was prepared by Defendants without any input from Plaintiff and presented for execution without any opportunity for negotiation.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 6

29.     The Lease states it is the "entire, final, complete, and fully integrated understanding or agreement between Lessor and Lessee and there is no understanding or agreement, oral or written, which is not set forth herein." *See* Exhibit "D" at ¶ 20(f).

30.     The Lease fails to comply with the mandatory lease provisions in the federal Truth-In-Leasing regulations set forth in 49 C.F.R. § 376.1 *et seq*. (the "**Regulations**") that apply to authorized carriers in the trucking business such as the corporate Defendants.

31.     A person injured on account of an authorized carrier's violation of, or failure comply with, the Regulations may bring an action seeking damages against such authorized carrier pursuant to 49 U.S.C. § 14704(a)(1) and (2), as well as seek attorneys' fees and costs as authorized by 49 U.S.C. § 14704(e).

32.     The Lease does not meet the requirements of Section 376.12 of the Regulations. Numerous mandatory terms are completely missing. Other terms in the Lease conflict with mandatory provisions in Section 376.12.

33.     Defendants failed to compensate Plaintiff correctly under the Parties' contracts and took inappropriate and unauthorized deductions and "charge-backs" from compensation otherwise due and owing to Plaintiff under the Lease.

34.     Defendants have engaged in a pattern and practice of ignoring its obligations under 49 C.F.R. Part 376, resulting in violations of those Regulations and breaches of the Lease.

35.     Plaintiff terminated the Management Contract and the Lease for cause and demanded Defendants return possession of the Trucks.

36.     Defendants obstinately refused and retain possession and control over Plaintiff's property at their yard, located in Miami-Dade County.

37.     This civil action seeks, among other things, to have this Court:

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 7

(a)     Award Plaintiff money damages with interest as well as its attorneys' fees and costs; and

(b)     Order that the corporate Defendants provide an accounting of all revenues (income and expenses) related to Plaintiff and its Trucks; and

(c)     Order Defendants return the Trucks to Plaintiff or compensate it for those losses.

## PARTIES

38.     Plaintiff, Powerhouse, is a California corporation headquartered in Santee, California.

39.     Powerhouse is the record title owner of the Trucks.

40.     Defendant, RivX, is a Florida limited liability company that transports freight in interstate commerce.

41.     RivX is qualified to, and does, transact business in Florida.

42.     RivX maintains its headquarters and transacts business from 8350 NW 52nd Terrace, Suite 107, Doral, Florida 33166.

43.     Defendant, RivX Automation, is a Florida corporation that transports freight in interstate commerce.

44.     RivX Automation is qualified to, and does, transact business in Florida.  According to its website, RivX Automation has operated in Florida and in interstate commerce for more than twelve years.[3]

45.     RivX Automation maintains its headquarters and transacts business from 8350 NW

---

[3]     *See* http://www.rivx.co/about-us, last visited August 11, 2023. This total is not accurate as to RivX Automation, which was not formed until 2022, and it is indicative of Defendants' use of alter ego companies.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 8

52nd Terrace, Suite 107, Doral, Florida 33166, the same address as RivX and Maceda.

46.     Defendant, Maceda, is a Florida corporation that transports freight in interstate commerce.

47.     Maceda is qualified to, and does, transact business in Florida.

48.     Maceda maintains its headquarters and transacts business from 8350 NW 52nd Terrace, Suite 107, Doral, Florida 33166, the same address as RivX and RivX Automation.

49.     Defendant, C2, is a Florida limited liability company that transports freight in interstate commerce.

50.     C2 is qualified to, and does, transact business in Florida.

51.     C2 maintains its headquarters and transacts business from 2630 NW 72nd Avenue, Doral, Florida 33166.

52.     Defendant, LNV, is a Florida limited liability company that transports freight in interstate commerce.

53.     LNV is qualified to, and does, transact business in Florida.

54.     LNV maintains its headquarters and transacts business from 9935 NW 10th Terrace, Miami, Florida 33172.

55.     Defendant, Rivodo, is an individual resident of Miami-Dade County, over the age of majority, and otherwise *sui generis*.

56.     Rivodo is a member of RivX, RivX Automation, and Maceda. He was a member of RivX Trucking LLC while that company was operating. He was a member of C2 until January 2023.

57.     Rivodo operated the corporate Defendants at all times relevant to this action.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 9

## JURISDICTION

58.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

59.     Violation of the Regulations is privately actionable pursuant to 49 U.S.C. §§ 14704(a)(1) and (2).

60.     Plaintiff's state law claims are so closely related to their claims under the Regulations that they form part of the same case or controversy under Article III of the United States Constitution.

61.     Defendants are subject to personal jurisdiction in Florida.

62.     The amount in controversy in this matter exceeds the sum of $75,000, exclusive of interest and costs.

63.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this District.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

64.     Maceda, C2, and LNV are authorized carriers in the freight transportation business. Each corporate Defendant is an alter ego of the others and of Rivodo, and they operate as one entity.

65.     Plaintiff entered into the Lease (nominally with RivX) and Defendants were supposed to commence operating the Trucks in February 2023. The Parties did business together until Plaintiff terminated the Management Contract and the Lease for cause by written notice dated August 4, 2023, a true and correct copy of which is attached as Exhibit "E."

66.     The Management Contract and the Lease are both contracts of adhesion, drafted exclusively by Defendants and/or their legal counsel, with no negotiation with truck owners or

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 10

operators such as Plaintiff, who were required to sign them, without any changes, as a condition of the leasing arrangement. *See* Exhibits "A" and "D."

67.     Without further explanation, the Lease states Plaintiff is entitled to what remains after Defendants take "eight percent (8%) of gross income earned by Client's truck which shall include: (i) Recruitment of driver; (ii) Dispatch of Lessor's truck under Lessee's authority; (iii) Factoring; (iv) Payment of all expenses including but not limited to maintenance, insurance, driver compensation, tolls, fuel, etc.; (v) Fuel cards and fuel card management; (vi) Monthly profit and loss statements; and (vii) Handling payouts within 15 days of previous month end." *See* Exhibit "D" at ¶ 5.

68.     The Lease does not define "gross income," nor does it specify any amounts that can be deducted from the "income" generated by the Trucks then used by Defendants to calculate amounts due to Plaintiff. *See id.*

69.     The miscellaneous items listed in the Lease cannot be expenses Defendants were permitted to deduct from "gross income" prior to calculating Plaintiff's compensation, because they include tasks Defendants were obligated to perform such as "monthly profit and loss statements" and "[handling paying within 15 days of previous month end." *See id.*

70.     In fact, the Lease provides that "[a]s between Lessor and Lessee, **all costs of rendering the Services (including the compensation of subcontractors as well as payment of all taxes or other government assessments imposed on Lessee) shall be borne solely and exclusively by [Defendants]**, unless otherwise provided in [the Lease]." *See* Exhibit "D" at ¶ 6. (emphasis added).

71.     The Lease is also notable for contents it does **not** include that are mandatory pursuant to the Truth-In-Leasing Regulations.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 11

(a)     The Lease does not clearly state the "amount to be paid by the authorized carrier for equipment and driver's services… ." *See* 49 C.F.R. § 376.12(d).

(b)     The Lease does not "specify that the [Defendants] will give the [Plaintiff], before or at the time of settlement, a copy of the rated freight bill, or in the case of contract carriers, any other form of documentation actually used for shipment containing the same information that would appear on a rated freight bill," even though Plaintiff was compensated based upon a percentage of Defendants' gross revenue. *See* 49 C.F.R. § 376.12(g).

(c)     The Lease does not "permit [Plaintiff] to examine the copies of the carrier's tariff of, in the case of contract carriers, other documents from which rates and charges are computed… ." *See id.*

(d)     The Lease does not "clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items." *See* 49 C.F.R. § 376.12(e).

(e)     The Lease does not "clearly specify that all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." *See* 49 C.F.R. §376.12(h).

(f)     The Lease does not "specify that the [Plaintiff is] not required to purchase or rent any products, equipment, or services from [Defendants] as a condition of entering into the lease arrangement." *See* 49 C.F.R. § 376.12(i).

(g)     The Lease does not "specify the terms of any agreement in which [Plaintiff is a party] to an equipment purchase or rental contract which gives [Defendants] the right to make

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 12

deductions from [Plaintiff's] compensation for purchase or rental payments." *See id.*

(h)     The Lease does not "specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier." *See* 49 C.F.R. § 376.12(f).

(i)     The Lease does not "clearly specify the legal obligation of [Defendants] to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906 … [or] any other insurance coverage for the operation of the leased equipment." *See* 49 C.F.R. § 376.12(j).

(j)     The Lease does not "specify the amount which will be charged-back to [Plaintiff]" by Defendants to "charge back" such amounts to Plaintiff. *See id.*

(k)     The Lease requires Plaintiff provide funds for Defendants to hold in escrow, but it lacks all the escrow disclosures required by 49 C.F.R. § 376.12(k).

72.     The Lease requires Defendants maintain general auto liability insurance for the Trucks. *See* Exhibit "D" at ¶ 9.

73.     Initially, Defendants purchased insurance coverage for the Trucks through C2. That coverage was cancelled for non-payment.

74.     Rivodo had actual and apparent authority from Defendants to perform their obligations under the Parties' contracts, coordinate the use of Plaintiff's Trucks, schedule trips and loads, decide (arbitrarily) if maintenance or other expenses were necessary, and calculate Plaintiff's compensation.

75.     Defendants failed to pay Plaintiff amounts equal to ninety-two percent (92%) of the gross income generated by its Trucks.

76.     Defendants failed to provide Plaintiff with rate information or an addendum to the

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 13

Lease for each trip it used the Trucks; it did not disclose material pricing information pursuant to the Regulations before or after the trip at the time of settlement.

77.     Instead, Defendants provided Plaintiff with monthly "profit and loss" statements for each Truck that merely reflected "bottom line" revenues and expenses for each trip, as well additional deductions for monthly expenses. No backup documentation was provided or made available to Plaintiff to substantiate revenues or expenses reflected in these monthly "profit and loss" statements.

78.     Pursuant to the Lease, Plaintiff's compensation for each load transported under the Lease should have been ninety-two percent (92%) of the income generated by the Truck, without any offset or deduction.

79.     Instead, Defendants calculated and paid Plaintiff's compensation using the "bottom line" income it provided to Plaintiff, after deducting expenses that Defendants alone determined were necessary and without providing Plaintiff advance notice of the expenses or their amounts.

80.     Defendants intentionally misrepresented the revenue calculations and paid Plaintiff less than ninety-two percent (92%) of the income generated by the Trucks as compensation under the Lease.

81.     Furthermore, pursuant to the Lease, Defendants had no right to take certain set-offs, deductions, or "charge-backs" from compensation due to Plaintiff.

82.     Defendants improperly set off or took deductions from Plaintiff's compensation due under the Lease for fuel, driver pay, insurance, trailer rental, GPS devices, parking spaces, and factoring without disclosing the charges (either as a flat fee or by specifically describing the methodology of calculation of the expense) in the Lease as required by the Regulations.

83.     Plaintiff failed to make payments to Plaintiff under the Lease within fifteen (15)

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 14

days of receipt of the necessary documentation for any trip.

84.    Defendants forced Plaintiff to purchase certain products and services from them as a condition of the Parties' leasing arrangement.

85.    Specifically, Defendants required Plaintiffs purchase fuel, insurance, permits, parking spaces, trailer rental, driver procurement (and driver payment), all maintenance and repair on the Trucks, and auto parts such as tires through the corporate Defendants:

(a)    Upon information and belief, Defendants purchased fuel for the Trucks at a discounted rate but charged Plaintiff higher amounts (without disclosing their methodology) and deducted the undiscounted fuel charges from compensation due to Plaintiff under the Lease.

(b)    Upon information and belief, Defendants rented trailers for the Trucks at discounted rates but charged Plaintiffs a higher flat fee of $1,600 per month per Truck (without disclosing their methodology) for trailer rental and deducted those fees from compensation due to Plaintiff under the Lease (despite Plaintiff paying for trailer rentals with the Invested Funds).

(c)    Upon information and belief, Defendants hired drivers for the Trucks at discounted rates but charged Plaintiffs a higher amount (without disclosing their methodology) for driver services and deducted those amounts from compensation due to Plaintiff under the Lease (despite Plaintiff paying for driver procurement with its Invested Funds).

(d)    Upon information and belief, Defendants charged Plaintiff an inflated flat fee of $2,000 per month per truck (without disclosing their methodology) for insurance and deducted those fees from compensation due to Plaintiff under the Lease (despite Plaintiff paying for insurance with the Investment Funds).

(e)    Defendants charged Plaintiff inflated amounts for maintenance, repairs, and new parts for the Trucks (without disclosing their methodology) and deducted those amounts from

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 15

compensation due to Plaintiff under the Lease (despite Plaintiff paying for trailer rentals with the Investment Funds).

(f)      Upon information and belief, Defendants charged Plaintiff inflated amounts for other expenses associated with the Trucks (without disclosing their methodology) and deducted those amounts from compensation due to Plaintiff under the Lease

86.      Even after Plaintiff paid for insurance both with his Investment Funds and monthly, Defendants allowed the insurance coverage over the Trucks (in the name of C2) to be cancelled for non-payment, rendering the Trucks inoperable.

87.      After Plaintiff cancelled the Management Contract and the Lease for cause, Defendants obtained new insurance coverage for the Trucks, this time in the name of LNV. Attached as Exhibit "F" is a Certificate of Insurance Defendants provided to Plaintiff's counsel on August 10, 2023, after the termination of the contracts. The Certificate of Insurance only applies to one of the three Trucks.

88.      Defendants also required Plaintiff rent certain equipment and items from them as a condition of the Parties' leasing arrangement.

89.      Specifically, Defendants forced Plaintiff to rent GPS devices (at the inflated rate of $100 per month per Truck) and parking spaces ($300 a month each) from the corporate Defendants.

90.      Defendants required Plaintiff provide $1,000 per Truck to them to be held in escrow during the terms of the Lease, without specifying the purpose of the escrowed funds beyond "protection of the asset."

91.      Defendants failed to provide Plaintiff with any information regarding its escrowed funds.

92.      Defendants refused multiple demands by Plaintiff for documentation substantiating

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 16

the revenues (income and expenses) Defendants used to calculate Plaintiff's compensation under the Lease.

93.     Defendants remain in possession of the Trucks and have obstinately refused to release custody of Plaintiff's property.

94.     On August 4, 2023, Plaintiff's counsel terminated the Management Contract and the Lease for cause and served a demand letter upon Defendants. *See* Exhibit "E." The correspondence also demanded immediate repossession of the Trucks.

95.     In response, Defendants refused to release custody of the Trucks and demanded Plaintiff pay a $25,000.00 "early termination fee" for each Truck, even though Plaintiff terminated the Parties' contracts for cause.

96.     Nothing in the Parties' contracts permits Defendants to retain possession of the Trucks until Plaintiff pays an "early termination fee."

## COUNT ONE – BREACHES OF LEASE
### (Against the corporate Defendants)

97.     Plaintiff adopts and realleges the allegations in the preceding paragraphs as if fully set forth herein.

98.     Plaintiff entered into the Lease with the corporate Defendants.

99.     Pursuant to the Lease, the corporate Defendants promised, *inter alia*, to compensate Plaintiff with amounts equal to ninety-two percent (92%) of the gross income they received from their customers.

100.    The corporate Defendants promised that as between the lessor and the lessee, they would be responsible for the payment of all expenses associated with operations of the Trucks.

101.    The corporate Defendants breached the Lease by failing to pay Plaintiff amounts equal to ninety-two percent (92%) of the gross income for Plaintiff's trips.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 17

102.    The corporate Defendants breached the Lease by improperly deducting amounts from Plaintiff's compensation.

103.    The corporate Defendants breached the Lease by failing to procure insurance coverage for the Trucks, which left them inoperable.

104.    The aforementioned breaches also constitute breaches of the corporate Defendants' duties of good faith and fair dealing.

105.    Plaintiff sustained damages as a direct and proximate result of the breaches of the Lease by the corporate Defendants.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to the Lease, and such other legal and equitable relief that the Court may deem appropriate.

## COUNT TWO – BREACHES OF MANAGEMENT CONTRACT
### (Against the corporate Defendants)

106.    Plaintiff adopts and realleges the allegations in paragraphs 1 through 96 as if fully set forth herein.

107.    Plaintiff entered into the Management Contract with the corporate Defendants.

108.    Pursuant to the Management Contract, the corporate Defendants promised, *inter alia*, to compensate Plaintiff with amounts equal to ninety-two percent (92%) of the gross income they received from their customers.

109.    The corporate Defendants promised to purchase the Trucks and acquire all permits, insurance, and registrations necessary for them to be "operational," on the road, and generating

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 18

income within ninety (90) days of the effective date of the Management Contract.

110.    The corporate Defendants also promised to secure insurance coverage for the Trucks.

111.    The corporate Defendants breached the Management Contract by failing to pay Plaintiff amounts equal to ninety-two percent (92%) of the gross income for Plaintiff's trips.

112.    The corporate Defendants breached the Management Contract by improperly deducting amounts from Plaintiff's compensation.

113.    The corporate Defendants breached the Management Contract by failing to ensure the Trucks were "operational," on the road, and generating income within ninety (90) days of the effective date.

114.    The corporate Defendants breached the Management Contract by failing to procure insurance coverage for the Trucks, then by procuring coverage and allowing it to be cancelled, rendering the Trucks inoperable.

115.    The aforementioned breaches also constitute breaches of the corporate Defendants' duties of good faith and fair dealing.

116.    Plaintiff sustained damages as a direct and proximate result of the breaches of the Management Contract by the corporate Defendants.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to the Management Contract, and such other legal and equitable relief that the Court may deem appropriate.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 19

## COUNT THREE – VIOLATIONS OF LEASING REGULATION § 376.12(d)
### (Against the corporate Defendants)

117.    Plaintiff adopts and realleges the allegations in paragraphs 1 through 96 as if fully set forth herein.

118.    The Lease violates the Regulations by, *inter alia*, failing to clearly state compensation terms in violation of 49 C.F.R. § 376.12(d).

119.    The primary goal of the Regulations is "to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position." *Port Drivers Federation 18, Inc. v. All Saints Express, Inc.*, 2009 WL 3234589 *2 (D.N.J. September 28, 2009).

120.    The corporate Defendants failed to comply with the requirements of the Regulations, 49 C.F.R. §§ 376.1, *et seq.*, including, but not limited to, 49 C.F.R. § 376.12(d) (compensation to be specified), 49 C.F.R. § 376.12(g) (copies of freight bill or other form of freight documentation), 49 C.F.R. § 376.12(e) (items specified in lease), 49 C.F.R. § 376.12(h) (charge-back items), 49 C.F.R. § 376.12(i) (products, equipment or services from authorized carrier), and 49 C.F.R. § 376.12(k) (escrow).

121.    Plaintiff an "owner" within the meaning of 49 C.F.R. § 376.2(d), and a "lessor" within the meaning of 49 C.F.R. § 376.2(f).

122.    Each corporate Defendant is an "authorized carrier" within the meaning of 49 C.F.R. § 376.2(a), and a "lessee" within the meaning of 49 C.F.R. § 376.2(g).

123.    The Lease is a "lease" within the meaning of 49 C.F.R. § 376.2(e).

124.    The Trucks leased from Plaintiff are "equipment" within the meaning of 49 C.F.R. § 376.2(b).

125.    Pursuant to 49 C.F.R. § 376.12(d):

The amount to be paid by the authorized carrier for equipment and



*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 20

driver's services **shall be clearly stated on the face of the lease** or in an addendum which is attached to the lease. Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier. . . . **The amount to be paid may be expressed as a percentage of gross revenue**, a flat rate per mile, a variable rate depending on the direction travelled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. (emphasis added).

126.   The Regulations require that compensation under the Leases may be calculated based upon: (i) a percentage of the lessor's gross revenue; (ii) a flat rate by mile; (iii) a variable rate based upon inapplicable circumstances; or (iv) an alternative payment arrangement specifically stated in the lease. *See id.*

127.   The Lease does not "clearly state[] on the face of the lease" the amount of Plaintiff's compensation, and therefore violates 49 C.F.R. § 376.12(d).

128.   Without further explanation, the Lease states that Plaintiff is entitled to what remains after the corporate Defendants take "eight percent (8%) of gross income earned by Client's truck which shall include: (i) Recruitment of driver; (ii) Dispatch of Lessor's truck under Lessee's authority; (iii) Factoring; (iv) Payment of all expenses including but not limited to maintenance, insurance, driver compensation, tolls, fuel, etc.; (v) Fuel cards and fuel card management; (vi) Monthly profit and loss statements; and (vii) Handling payouts within 15 days of previous month end."

129.   The Lease does not define "gross income," nor does it specify any amounts that can be deducted from the income generated by the Trucks used to calculate amounts due to Plaintiff.

130.   The term "gross," in reference to "income," means "**without** deductions."

131.   Pursuant to the Lease, Plaintiff earned ninety-two percent of the **gross income** of the corporate Defendants for the loads transported on the Trucks.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 21

132.    The corporate Defendants failed to pay Plaintiff the contractually agreed percentage of its gross income, as required by the Lease.

133.    Instead, Defendants misrepresented the revenues for Plaintiff's loads, improperly deducted expenses (some of which Plaintiff had already paid for under the Management Contract, and none of which were disclosed in the Lease) and provided Plaintiff with a "bottom line" amount each month in a "profit and loss" statement without supporting documentation of income or expenses.

134.    Plaintiff requested documentation of the revenues (income and expenses) the corporate Defendants used for loads transported under the Lease. Defendants refused.

135.    As a direct and proximate result of the breaches of §376.12(d) of the Regulations by the corporate Defendants, Plaintiff has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e), and such other legal and equitable relief that the Court may deem appropriate.

## COUNT FOUR – VIOLATIONS OF LEASING REGULATION § 376.12(g)
### (Against the corporate Defendants)

136.    Plaintiff adopts and realleges the allegations in paragraphs 1 through 96 and 121 to 124 as if fully set forth herein.

137.    Pursuant to 49 C.F.R. § 376.12(g):

**When a lessors revenue is based upon a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of the settlement, a copy of the rated freight bill, or in the case of contract carriers, any other form of documentation actually**

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 22

**used for a shipment containing the same information that would appear on a rated freight bill**. Regardless of the method of compensation, **the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed**, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. (Emphasis added).

138.    The Lease fails to meet the requirements of 49 C.F.R. § 376.12(g) in that it does not permit the drivers to examine documents "from which rates and charges are computed."

139.    The corporate Defendants violated Section 376.12(g) by failing to provide Plaintiff with a rated freight bill or other documentation reflecting the revenues (income and expenses) for trips by Plaintiff's Trucks.

140.    The corporate Defendants refused Plaintiff's requests to examine documents setting forth the rates and charges paid by their shipping customers and used to determine revenues and Plaintiff's compensation.

141.    As a result of Defendants restricting Plaintiff's access to examine the documents, Plaintiff had no opportunity to fully understand how Defendants calculated its pay.

142.    As a direct and proximate result of the breaches of Section 376.12(g) of the Regulations by the corporate Defendants, Plaintiff suffered substantial damages.

143.    As a result of Defendants' improper refusal to give Plaintiff access to its rates and charges and documentation of the same, to date, Plaintiff is unable to determine the full amount of damages it has sustained.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 23

attorney's fees pursuant to 49 U.S.C. § 14704(e), and such other legal and equitable relief that the

Court may deem appropriate.

### COUNT FIVE – VIOLATIONS OF LEASING REGULATION § 376.12(e)
### (Against the corporate Defendants)

144.    Plaintiff adopts and realleges the allegations in paragraphs 1 through 96 and 121 to

124 as if fully set forth herein.

145.    Pursuant to 49 C.F.R. § 376.12(e):

> The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items.  The lease shall clearly specify who is responsible for loading and unloading the property onto and from the motor vehicle, and the compensation, if any, to be paid for this service. … If the authorized carrier is authorized to receive a refund or a credit for base plates purchased by the lessor from, and issued in the name of, the authorized carrier, or if the base plates are authorized to be sold by the authorized carrier to another lessor the authorized carrier shall refund to the initial lessor on whose behalf the base plate was first obtained a prorated share of the amount received.

146.    The Lease fails to meet the requirements of 49 C.F.R. § 376.12(e) in that it does

not "clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes,

empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates

and licenses, and any unused portions of such items."

147.    As a direct and proximate result of the breaches of Section 376.12(e) of the

Regulations by the corporate Defendants, Plaintiff suffered substantial damages.

148.    As a result of Defendants' improper refusal to give Plaintiff access to its rates and

charges and documentation of the same, to date, Plaintiff is unable to determine the full amount of

damages it has sustained.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation,

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 24

C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e), and such other legal and equitable relief that the Court may deem appropriate.

### COUNT SIX – VIOLATIONS OF LEASING REGULATION § 376.12(h)
### (Against the corporate Defendants)

149.    Plaintiff adopts and realleges the allegations in paragraphs 1 through 96 and 121 to 124 as if fully set forth herein.

150.    Pursuant to 49 C.F.R. § 376.12(h):

> The lease shall clearly specify that all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

151.    The Lease fails to meet the requirements of 49 C.F.R. § 376.12(h) in that it does not "clearly specify that all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed."

152.    The corporate Defendants further violated Section 376.12(h) by failing to provide copies of documents necessary to determine the validity of "charge back" items.

153.    The corporate Defendants "charged back" expenses to Plaintiff including fuel, driver pay, trailer rental, insurance, maintenance and repairs, new parts, GPS devices, and parking spaces without disclosing the same – or "how the amount of each item is to be computed" – as required by the Regulations.

154.    As a direct and proximate result of the breaches of Section 376.12(h) of the

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 25

Regulations by the corporate Defendants, Plaintiff suffered substantial damages.

155.    As a result of Defendants' improper refusal to give Plaintiff access to its rates and charges and documentation of the same, to date, Plaintiff is unable to determine the full amount of damages it has sustained.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e), and such other legal and equitable relief that the Court may deem appropriate.

### COUNT SEVEN – VIOLATIONS OF LEASING REGULATION § 376.12(i)
### (Against the corporate Defendants)

156.    Plaintiff adopts and realleges the allegations in paragraphs 1 through 96 and 121 to 124 as if fully set forth herein.

157.    Pursuant to 49 C.F.R. § 376.12(i):

> The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement.  The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

158.    The Lease fails to meet the requirements of 49 C.F.R. § 376.12(i) in that it does not specify "that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement."

159.    The Lease also fails to meet the requirements of 49 C.F.R. § 376.12(i) in that it does not specify "the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 26

compensation for purchase or rental payments."

160.    The corporate Defendants required Plaintiff purchase everything it needed to operate from them and deducted those amounts from compensation due to Plaintiff under the Lease.

161.    The corporate Defendants required Plaintiff rent GPS devices, trailers, and parking spaces from them each month as a condition of the lease arrangement and deducted those amounts from compensation due to Plaintiff under the Lease.

162.    The corporate Defendants failed to provide any documentation or information to Plaintiff regarding the prices they paid for fuel, insurance, drivers, GPS devices, and other expenses it charged to Plaintiff, but upon information and belief, the corporate Defendants charged Plaintiff a premium over amounts that it paid.

163.    As a direct and proximate result of the breaches of 49 C.F.R. § 376.12(i) by the corporate Defendants, Plaintiff sustained financial injury.

164.    As a result of Defendants' improper refusal to give Plaintiff access to its rates and charges and documentation of the same, to date, Plaintiff is unable to determine the full amount of damages it has sustained.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e), and such other legal and equitable relief that the Court may deem appropriate.

### COUNT EIGHT – VIOLATIONS OF LEASING REGULATION § 376.12(j)
### (Against the corporate Defendants)

165.    Plaintiff adopts and realleges the allegations in paragraphs 1 through 96 and 121 to

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 27

124 as if fully set forth herein.

166.    Pursuant to 49 C.F.R. § 376.12(j)(1):

> The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. **If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor**. (Emphasis added.)

167.    The Lease fails to meet the requirements of 49 C.F.R. § 376.12(j)(1) in that it does not "clearly specify the legal obligation of [RivX] to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906."

168.    The Lease further fails to meet the requirements of 49 C.F.R. § 376.12(j)(1) because the corporate Defendants charged back to Plaintiff the cost of insurance, but the Lease does not "specify the amount which will be charged-back to the lessor."

169.    The corporate Defendants violated Section 376.12(j)(1) by forcing Plaintiff to purchase insurance through them, first under the Management Contract and then for $2,000 per month per Truck (regardless of the number of trips or miles traveled) through the companies without specifying that requirement in the Lease, and charging back those costs to Plaintiff without specifying the methodology or amount in the Leases.

170.    Defendants then allowed insurance coverage over the Trucks to lapse.

171.    The corporate Defendants failed to provide any documentation or information to Plaintiff regarding the prices they paid for insurance, but upon information and belief, the corporate Defendants charged Plaintiff a premium over amounts that they paid, if they paid for coverage at all.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 28

172.     As a direct and proximate result of the breaches of 49 C.F.R. § 376.12(j)(1) by the corporate Defendants, Plaintiff sustained financial injury. By way of example, but not limitation, the corporate Defendants charged Plaintiff for insurance under the Management Contract and automatically deducted charges for insurance from compensation due to Plaintiff.

173.     As a result of Defendants' improper refusal to give Plaintiff access to its rates and charges and documentation of the same, to date, Plaintiff is unable to determine the full amount of damages it has sustained.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e), and such other legal and equitable relief that the Court may deem appropriate.

### COUNT NINE – VIOLATIONS OF LEASING REGULATION § 376.12(f)
### (Against the corporate Defendants)

174.     Plaintiffs adopt and reallege the allegations in paragraphs 1 through 96 and 121 to 124 as if fully set forth herein.

175.     Pursuant to 49 C.F.R. § 376.12(f):

> Payment period. The lease shall specify that payment to the lessor shall be made **within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier**. The documentation required before the lessor can receive payment is limited to log books required by the Department of Transportation and those documents necessary for the authorized carrier to secure payment from the shipper. In addition, the lease may provide that, upon termination of the lease agreement, as a condition precedent to payment, the lessor shall remove all identification devices of the authorized carrier and, except in the case of identification painted directly on equipment, return them to the carrier. If the identification device has been lost or stolen, a letter certifying its removal will satisfy this requirement.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 29

Until this requirement is complied with, the carrier may withhold final payment. The authorized carrier may require the submission of additional documents by the lessor but not as a prerequisite to payment. Payment to the lessor shall not be made contingent upon submission of a bill of lading to which no exceptions have been taken. The authorized carrier shall not set time limits for the submission by the lessor of required delivery documents..

176.    The Lease fails to meet the requirements of 49 C.F.R. § 376.12(f) in that it does not specify payment within fifteen (15) days of each trip in the service of the authorized carrier.

177.    The corporate Defendants violated Section 376.12(f) by failing to pay Plaintiff within fifteen (15) days of the submission of delivery documents for trips with the Trucks.

178.    As a direct and proximate result of the breaches of 49 C.F.R. § 376.12(f) by the corporate Defendants, Plaintiff sustained financial injury.

179.    As a result of Defendants' improper refusal to give Plaintiff access to its escrowed funds, to date, Plaintiff is unable to determine the full amount of damages it has sustained.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e), and such other legal and equitable relief that the Court may deem appropriate.

### COUNT TEN – VIOLATIONS OF LEASING REGULATION § 376.12(k)
### (Against the corporate Defendants)

180.    Plaintiffs adopt and reallege the allegations in paragraphs 1 through 96 and 121 to 124 as if fully set forth herein.

181.    Pursuant to 49 C.F.R. § 376.12(k):

If escrow funds are required, the lease shall specify:

(1)    The amount of any escrow fund or performance bond

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 30

required to be paid by the lessor to the authorized carrier or to a third party.

(2)     The specific items to which the escrow fund can be applied.

(3)     That while the escrow fund is under the control of the authorized carrier, the authorized carrier shall provide an accounting to the lessor of any transactions involving such fund. The carrier shall perform this accounting in one of the following ways:

(i) By clearly indicating in individual settlement sheets the amount and description of any deduction or addition made to the escrow fund; or

(ii) By providing a separate accounting to the lessor of any transactions involving the escrow fund. This separate accounting shall be done on a monthly basis.

(4)     The right of the lessor to demand to have an accounting for transactions involving the escrow fund at any time.

(5)     That while the escrow fund is under the control of the carrier, the carrier shall pay interest on the escrow fund on at least a quarterly basis. For purposes of calculating the balance of the escrow fund on which interest must be paid, the carrier may deduct a sum equal to the average advance made to the individual lessor during the period of time for which interest is paid. The interest rate shall be established on the date the interest period begins and shall be at least equal to the average yield or equivalent coupon issue yield on 91- day, 13-week Treasury bills as established in the weekly auction by the Department of Treasury.

(6)     The conditions the lessor must fulfill in order to have the escrow fund returned. At the time of the return of the escrow fund, the authorized carrier may deduct monies for those obligations incurred by the lessor which have been previously specified in the lease, and shall provide a final accounting to the lessor of all such final deductions made to the escrow fund. The lease shall further specify that in no event shall the escrow fund be returned later than 45 days from the date of termination.

182.    The Lease fails to meet the requirements of 49 C.F.R. § 376.12(k) in that it does not specify the corporate Defendants required Plaintiff to provide escrow funds as a condition of the leasing arrangement.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 31

183.    The Lease lacks any of the escrow requirements set forth in Section 376.12(k) of the Regulations.

184.    The corporate Defendants violated Section 376.12(k) by forcing Plaintiff to provide funds to be held in escrow without specifying the purposes for which the funds could be used in the Lease.

185.    The corporate Defendants also violated Section 376.12(k) by failing to provide Plaintiff with the interest earned on its escrowed funds.

186.    The corporate Defendants further violated Section 376.12(k) by failing to provide Plaintiff with an accounting of the escrowed funds.

187.    As a direct and proximate result of the breaches of 49 C.F.R. § 376.12(k) by the corporate Defendants, Plaintiff sustained financial injury.

188.    As a result of Defendants' improper refusal to give Plaintiff access to its escrowed funds, to date, Plaintiff is unable to determine the full amount of damages it has sustained.

WHEREFORE, Plaintiff demands judgment be entered against RivX, RivX Automation, C2, LNV, and Maceda, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together with prejudgment interest, costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e), and such other legal and equitable relief that the Court may deem appropriate.

## COUNT ELEVEN – ALTER EGO
### (Against Defendants)

189.    Plaintiffs adopt and reallege the allegations in paragraphs 1 through 96 as if fully set forth herein.

190.    The corporate Defendants are mere instrumentalities and alter egos of each other and Rivodo.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 32

191.    The corporate Defendants and Rivodo have engaged in improper conduct for a fraudulent purpose.

192.    The improper conduct of the corporate Defendants and Rivodo and the fraudulent use of the corporate form has caused damages to Plaintiff.

193.    Upon information and belief, the corporate Defendants were not properly capitalized.

194.    Defendants commingled their assets.

195.    Rivodo ignored corporate formalities and used the corporate Defendants for his own personal purposes, such that each corporate Defendant is an alter ego of Rivodo.

196.    Rivodo ignored corporate formalities and used each corporate Defendant for the benefit of the other, such that they are alter egos of each other.

197.    Under the circumstances, it would be unjust and inequitable for Defendants to be insulated from liability behind a corporate veil.

198.    Plaintiff's injuries, losses, and damages are either permanent or continuing in nature and will continue to suffer said losses, damages, and impairments in the future.

WHEREFORE, Plaintiff demands that judgment be entered in her favor and against Defendants, jointly and severally, for compensatory damages in amounts to be determined at trial, together with prejudgment interest, and such other legal and equitable relief that the Court may deem appropriate.

## COUNT TWELVE – EQUITABLE ACCOUNTING
### (Against the corporate Defendants)

199.    Plaintiffs adopt and reallege the allegations in paragraphs 1 through 96 as if fully set forth herein.

200.    Each corporate Defendant had a fiduciary relationship with Plaintiff pursuant to the

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 33

Lease, the Management Contract, insurance contracts, federal law, and the Regulations.

201.    When it passed legislation and authorized Regulations that specifically outlaw Defendant's conduct, Congress recognized that independent truck owners and operators are unfairly dependent upon authorized carriers such as the corporate Defendants. Owners and operators are necessarily placed in vulnerable positions where unscrupulous lessees such as the corporate Defendants can take advantage over them.

202.    The transactions at issue are complex and involve calculating Plaintiff's compensation under the Lease on a per-trip basis based upon Defendants' "gross income" for such trips (not net revenues).

203.    Defendants willfully and deliberately frustrated Plaintiff's efforts to review documentation of the revenues (income and expenses) used to calculate compensation under the Lease.

204.    Plaintiff has no way to assess its damages and no adequate remedy at law.

WHEREFORE, Plaintiff demands that the Court compel an accounting of the revenues and improper deductions taken by RivX, RivX Automation, C2, LNV, and Maceda and the amount Plaintiff earned under the Management Contract and the Lease, together costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e) and the contracts, and such other legal and equitable relief that the Court may deem appropriate.

### COUNT THIRTEEN – FRAUD
### (Against Defendants)

205.    Plaintiffs adopt and reallege the allegations in paragraphs 1 through 96 as if fully set forth herein.

206.    Defendants knowingly and intentionally made false statements of material facts to Plaintiff. Specifically, Rivodo (individually, and as an agent of the other Defendants)

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 34

misrepresented the business and its profitability to induce Plaintiff to enter the Management Contract and the Lease.

207.   The Investment Proposal contains fraudulent misrepresentations. *See* Exhibit "A."

208.   Among Defendants' misrepresentations are those described in Paragraphs 8 through 16 above.

209.   Defendants presented Plaintiff with fraudulent example "profit and loss" statements. *See* Composite Exhibit "B."

210.   Rivodo signed the Management Contract on behalf of a company that he dissolved one week earlier. *See* Exhibits "A" and "C."

211.   Defendants further misrepresented their revenues (income and expenses) for use of the Trucks under the Lease.

212.   Defendants told Plaintiffs the revenues received by the corporate Defendants for Plaintiff's loads were less than their true amounts. Defendants intended to reduce—and did reduce—the compensation they paid Plaintiff under the Lease.

213.   Defendants misrepresented their business model – which is dependent upon owners leasing and purchasing **all expenses related to the operation of the Trucks directly from or through Defendants** was legal, which it directly violates the Regulations.

214.   Defendants also failed to disclose material facts to Plaintiff. Specifically, Defendants failed to provide written documentation of the revenues (income and expenses) for Plaintiff's loads, as required by the Regulations.

215.   Defendants willfully and deliberately frustrated Plaintiff's efforts to review documentation of the revenues and deductions used to calculate Plaintiff's compensation under the Lease.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 35

216.    By refusing to disclose documentation of its revenues (income and expenses), Defendants intended that Plaintiff reach the false conclusion that Defendants accurately represented the revenues and deductions used to calculate Plaintiff's compensation under the Lease.

217.    At the time of each of the aforementioned misrepresentations or omissions, Defendants knew that the statement was false or the omission was material and would lead Plaintiff to a false conclusion, and intended to induce Plaintiff to act upon it—by entering into the Management Contract and the Lease, agreeing to transport cargo for Defendants, and doing business with Defendants.

218.    Plaintiff acted in reliance upon the misrepresentations and omissions by investing in the Trucks, leasing them to the corporate Defendants, and allowing Defendants to manage the Trucks and account for income and expenses.

219.    Plaintiff was injured because of the fraudulent statements and omissions by Defendants.

220.    Plaintiff's injuries, losses, and damages are permanent and will continue in the future.

WHEREFORE, Plaintiff demands judgment be entered against the Defendants, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, together costs of suit, and such other legal and equitable relief that the Court may deem appropriate. Plaintiff also reserves the right to seek punitive damages at the appropriate procedural posture and pursuant to Florida law and procedure.

## COUNT FOURTEEN - CONVERSION
### (Against Defendants)

221.    Plaintiffs adopt and reallege the allegations in paragraphs 1 through 96 as if fully set forth herein.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 36

222.    Plaintiff was enticed to provide the Trucks to Defendants.

223.    Defendants have custody and control over the Trucks.

224.    Plaintiff demanded Defendants return the Trucks.

225.    Defendants refused the demand.

226.    Defendants have wrongful possession of the Trucks; they no longer have any authority to keep any of Plaintiff's property.

227.    Defendants have no legal right to control or possess the Trucks.

228.    Defendants have taken, and now maintain, possession and control over the Trucks with an intent to exercise ownership over them that is inconsistent with Plaintiff title and right to possess the Trucks.

229.    As a direct and proximate cause of the conversion, Plaintiff suffered damages including loss of the Trucks.

230.    Plaintiff's injuries, losses, and damages are either permanent or continuing in nature and it will continue to suffer said losses, damages, and impairments in the future.

WHEREFORE, Plaintiff demands the entry of a final judgment in its favor against Defendants, jointly and severally, in an amount to be determined at trial, consisting of compensatory damages, prejudgment and postjudgment interest, and such further relief as this Court deems just and proper.

## COUNT FIFTEEN - REPLEVIN
### (Against Defendants)

231.    Plaintiffs adopt and reallege the allegations in paragraphs 1 through 96 as if fully set forth herein.

232.    This is an action to recover possession of personal property in Miami-Dade County, Florida.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 37

233.     Plaintiff owns the Trucks identified by VIN number in Paragraph 2 above.

234.     Plaintiff is the owner of the Trucks and is entitled to possession of them pursuant to its title, the Management Contract, and the Lease.

235.     To the best of Plaintiff's knowledge, information, and belief, Defendants have custody and control over the Trucks at their yard in Miami-Dade County.

236.     Defendants came into possession of the Trucks pursuant to the Lease. The Trucks have been wrongfully detained by Defendants following the termination, for cause, of the Management Contract and the Lease.

237.     Defendants have no legal right to control or possess the Trucks.

238.     Plaintiff demanded Defendants return the Trucks.

239.     Defendants refused the demand.

240.     Defendants have not taken the Trucks under an execution or an attachment against the property, or for any tax, assessment, or fine pursuant to law.

241.     To the best of Plaintiff's knowledge, information, and belief, Defendants detain the Trucks because they refuse to recognize the termination, for cause, of the Management Contract and the Lease.

WHEREFORE, Plaintiff demands the entry of a final judgment in its favor against Defendants for possession of the Trucks, and such further relief as this Court deems just and proper.

## COUNT SIXTEEN - UNFAIR TRADE PRACTICES
### (Against Defendants)

242.     Plaintiffs adopt and reallege the allegations in paragraphs 1 through 96 as if fully set forth herein.

243.     Section 501.204(1), Florida Statutes, indicates "[u]nfair methods of competition,

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 38

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

244.     Pursuant to § 501.203(3)(c), Florida Statutes, a violation of Chapter 501, Part II, may be based upon "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."

245.     Defendants violated the Regulations and compelled Plaintiffs (and, upon information and belief, other independent owners and operators of trucks) to enter into an illegal and unconscionable lease that fail to include contents required by federal law and the Truth-In-Leasing Regulations.

246.     The Lease lacks nearly every mandatory Truth-In-Leasing disclosure that an authorized carrier must include in its trucking leases pursuant to 49 C.F.R. § 376.12.

247.     Defendants also engaged in deceptive and unfair trade practices in violation of Section 501, *et seq.*, Florida Statutes, by misrepresenting Defendant's revenues, illegally deducting charge-backs from compensation due to Plaintiff, reducing Plaintiff's compensation based upon falsely deflated net revenues and illegal deductions, and rejecting Plaintiff's efforts to uncover the scheme by reviewing documentation of the income and expenses.

248.     Defendants made the fraudulent statements and omissions described herein.

249.     Defendants converted the Trucks.

250.     Defendants use each other as alter egos.

251.     Defendants' acts would likely deceive a reasonable truck owner and operator in the same position as Plaintiff.

252.     Defendants willfully engaged in the acts and practices when they knew or should have known that such acts and practices were unfair or deceptive or otherwise prohibited by law.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 39

253.    Unless Defendants are enjoined from engaging further in the acts and practices complained of, Defendants' continued activities will result in irreparable injury to the public for which there is no adequate remedy at law.

254.    Plaintiff sustained financial damages because of Defendants' deceptive and unfair trade practices, in that Plaintiff suffered monetary losses.

255.    Plaintiff's injuries, losses, and damages are permanent and will continue in the future.

256.    Plaintiff was compelled to retain counsel and to pay their attorneys a  reasonable fee.

257.    Plaintiff is entitled to its attorney's fees and costs pursuant to section 521.2105, Florida Statutes.

WHEREFORE, Plaintiff demands judgment be entered against the Defendants, jointly and severally, for compensatory and consequential damages in an amount to be determined at trial, for an injunction preventing Defendants from entering into future leases that violate the Regulations, together costs of suit, reasonable attorney's fees pursuant to 49 U.S.C. § 14704(e) and Fla. Stat. § 521.2105, and such other legal and equitable relief that the Court may deem appropriate. Plaintiff also reserves the right to seek punitive damages at the appropriate procedural posture and pursuant to Florida law and procedure.

## **JURY DEMAND**

258.    Plaintiffs demand a trial by jury on all claims to which they are entitled.

*Powerhouse Mortgage & Realty Inc. v. RivX Logistics LLC, et al.*, S.D. Fla. Case No. 23-cv-23080
Complaint for Damages and Accounting
Page 40

Dated: August 14, 2023

Respectfully submitted,

/s/ John B. Rosenquest IV

John B. Rosenquest IV
  Florida Bar No. 048431
ROSENQUEST LAW FIRM P.A.
  8325 NE 2nd Avenue, Suite 114
  Miami, Florida 33138
  Tel:  305-607-5115
  Fax: 305-402-8183
  *jay@rosenquestlawfirm.com*

*Counsel for Plaintiff*